IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GREAT WEST CASUALTY COMPANY,      )
                                  )
        Plaintiff,                )
                                  )
        v.                        )        1:21CV338
                                  )
ACE AMERICAN INSURANCE COMPANY    )
and PACKAGING CORPORATION OF      )
AMERICA,                          )
                                  )
        Defendants.               )
                                  )
********************************
ACE AMERICAN INSURANCE COMPANY,   )
                                  )
        Third-Party Plaintiff,    )
                                  )
        v.                        )
                                  )
SALEM CARRIERS, INC., and         )
GEMINI INSURANCE COMPANY,         )
                                  )
        Third-Party Defendants.   )


**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

        Presently before this court are Plaintiff Great West

Casualty Company's Motions for Judgment on the Pleadings and

Motions to Dismiss, (Docs. 61, 74) Defendant ACE American

Insurance Company's counterclaim, (Doc. 64), and Defendant

Packaging Corporation of America's counterclaim, (Doc. 59). As

ACE and PCA allege similar counterclaims, this court will

address both of Great West's Motions for Judgment on the

Pleadings and Motions to Dismiss together. For the reasons set forth herein, this court will deny Great West's motions.

## I. <u>FACTUAL BACKGROUND</u>

On a motion for judgment on the pleadings, "the court must accept all of the non-movant's factual averments as true." <u>SmithKline Beecham Corp. v. Abbott Lab'ys.</u>, No. 1:15CV360, 2016 WL 922792, at *3 (M.D.N.C. Mar. 10, 2016). The same standard applies to a motion to dismiss. <u>See</u> <u>Ray v. Roane</u>, 948 F.3d 222, 226 (4th Cir. 2020). The facts taken in the light most favorable to PCA and ACE—the two defendant/counter-plaintiffs, and thus the non-moving parties—are as follows.

### A. <u>Parties and Relevant Background</u>

Plaintiff Great West Casualty Company ("Great West") is a Nebraska Corporation authorized to conduct insurance business in the State of North Carolina. (<u>See</u> Great West's First Am. Compl. For Declaratory J. and Other Relief ("Great West's First Am. Compl.") (Doc. 57) ¶ 1.) Defendant Packaging Corporation of America ("PCA") is incorporated in Delaware with its principle place of business in Illinois. (<u>See</u> Great West's First Am. Compl. (Doc. 57) ¶ 3.) Defendant ACE American Insurance Company ("ACE") is a Pennsylvania corporation. (<u>See</u> ACE's Answer to Great West's First Am. Compl., Am. Countercl., and Am. Cross-cl. ("ACE's Answer and Countercl.") (Doc. 64) at 14.)

- 2 -

In October 2015, Great West issued a commercial auto insurance policy ("Insurance Policy") to Salem Carriers, Inc. ("Salem") for a policy period of October 1, 2015 to October 1, 2016. (See Great West's Compl. (Doc. 1) ¶ 14; Great West's First Am. Compl. (Doc. 57) ¶ 14; ACE's Answer and Countercl. (Doc. 64) at 17; PCA's Answer to Great West's First Am. Compl., and Countercl. ("PCA's Answer and Countercl.") (Doc. 59) at 18.)

The complaint and counterclaims in this case arise out of an accident in which a Salem employee, Kellie Wallace, was injured; she subsequently filed a complaint in state court to recover for injuries sustained. (See ACE's Answer and Countercl. (Doc. 64) at 21–22; PCA's Answer and Countercl. (Doc. 59) at 19.)

### B. **Salem and PCA's Agreements**

In May 2007, Salem entered into an annually-renewing contract with PCA to perform cargo delivery services ("Transportation Agreement"). (See ACE's Answer and Countercl. (Doc. 64) at 15–16.) Under the Transportation Agreement, PCA was the "shipper," and Salem was the "carrier." (See ACE's Answer and Countercl. (Doc. 64) at 15.)

The Transportation Agreement required Salem to defend and indemnify PCA against personal injury claims stemming from transportation of PCA's goods, so long as those claims did not

- 3 -

arise from PCA's sole negligence. (See id. at 16.) The
indemnification provision of the Transportation Agreement
states:

> 5. INDEMNITY, LIABILITY & INSURANCE COVERAGES
> (a) CARRIER shall at all times, both during and after
> the effective term, defend, indemnify, and hold
> harmless SHIPPER . . . from and against any and all
> settlements, losses, assessments, damages, costs,
> counsel fees and all other expenses relating to or
> arising from any and all claims of every nature or
> character concerning CARRIER's actions or inaction
> during or related to CARRIER's performance of services
> for SHIPPER without limitation. Such actions or
> inaction include but are not limited to, claims for
> personal injury . . . asserted against SHIPPER by an
> agent or employee of CARRIER or any other person. This
> indemnification is not applicable to the extent any
> and all settlements, losses, damages, assessments,
> costs, counsel fees and all other expenses relating to
> or arising from claims of every nature or character
> result from the sole negligence of SHIPPER or its
> employees or agents.

(Ex. B ("Transportation Agreement") (Doc. 57-2) ¶ 5(a).)

Under the Transportation Agreement, Salem was deemed an
independent contractor to PCA, and Salem was considered to have
exclusive control over its employees or agents. (See ACE's
Answer and Countercl. (Doc. 64) at 16–17.)

- 4 -

PCA was named as an additional insured under the Insurance Policy issued by Great West to Salem via an endorsement.[1] (See ACE's Answer and Countercl. (Doc. 64) at 18; PCA's Answer and Countercl. (Doc. 59) at 19.) The insurance endorsement included a provision defining when an additional insured party would receive coverage under the primary insured's policy:

> Covered Autos Liability Coverage -
> Who is an Insured is changed to include as an
> "insured" the person or organization shown in the
> SCHEDULE on this endorsement only if they are liable
> for the conduct of an "insured" shown in the Who is an
> Insured provisions and only to the extent of that
> liability.
>
> . . .
>
> The coverage provided by this endorsement ends when
> the Additional Insured is not liable for your
> conduct.

(Ex. C ("Insurance Policy") (Doc. 57-3) at 229.)

---

[1] The Insurance Policy includes two endorsements listing PCA as an "additional insured." (Compare Ex. C ("Insurance Policy") (Doc. 57-3) at 229 with Insurance Policy (Doc. 57-3) at 419.) One endorsement modifies insurance provided under Commercial Auto Coverage, (see Insurance Policy (Doc. 57-3) at 229), while the other modifies insurance provided under Commercial General Liability Coverage, (see Insurance Policy (Doc. 57-3) at 419). The parties have not identified which endorsement is at issue in this case. For purposes of the present motions, this court will look to the endorsement modifying Commercial Auto Coverage. However, for future stages of these proceedings, this court requests further specificity from the parties on the relevant endorsement.

- 5 -

### C. **<u>Kellie Wallace's Accident</u>**

On October 2, 2015, a Salem employee was transporting cargo for PCA in a Salem-owned trailer from a PCA facility in Honea Path, South Carolina to a PCA facility in Salisbury, North Carolina, pursuant to the Transportation Agreement. (<u>See</u> ACE's Answer and Countercl. (Doc. 64) at 18-19.) Allegedly, neither the Salem employee driving the trailer, nor any other Salem employee, inspected the cargo inside the trailer, ensured that the goods were properly distributed or secured, or adjusted the cargo to properly secure it within the trailer at any point during the journey, including at loading in Honea Path, during the drive, or upon arrival in Salisbury. (<u>See</u> <u>id.</u> at 19-20.) At PCA's Salisbury facility, a Salem employee, Kellie Wallace, opened the back doors of the trailer—allegedly without discussion or planning with the driver—after which a 500-pound

pallet fell off the tractor-trailer and struck her.[2] (See id. at 21-22.)

On August 13, 2018, Ms. Wallace sued PCA for negligence in North Carolina state court ("Underlying Lawsuit") to recover for her injuries resulting from the pallet that struck her. (See PCA's Answer and Countercl. (Doc. 59) at 19.) Salem was not included as a party in the Underlying Lawsuit.[3] (See ACE's Answer and Countercl. (Doc. 64) at 22.) Subsequently, all parties to the Underlying Lawsuit settled. (See id. at 22.)

---

[2] Although Ms. Wallace's accident took place at a PCA facility, PCA has not alleged specific facts in its Answer and Counterclaim, (Doc. 59), pertaining to Ms. Wallace's accident or any potential negligence on the part of Salem. The majority of the facts surrounding this accident have been pleaded by ACE. (Doc. 64).

To survive a Rule 12(b)(6) motion, a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if the claimant "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

Thus, this court will provide PCA another opportunity to set out the specific facts, rather than legal conclusions, upon which it relies by ordering PCA to file an amended counterclaim.

[3] Salem is not included as a party in the Underlying Lawsuit because Ms. Wallace filed a workers' compensation claim under North Carolina's Workers' Compensation Act against Salem. (See ACE's Answer and Countercl. (Doc. 64) at 22.) The worker's compensation claim has been resolved. (See id.)

PCA alleges that the Insurance Policy obligates Great West to defend PCA in the Underlying Lawsuit, but that Great West nevertheless insists it is not required to do so. (See id. (Doc. 59) at 20.) Instead, Great West alleges that ACE issued a policy insuring PCA, ultimately contending that ACE must provide coverage and defend PCA. (See Great West's First Am. Compl. (Doc. 57) at ¶¶ 41-44.) Despite Great West's determination that it has no duty to defend PCA, it has nonetheless provided for PCA's defense in the Underlying Lawsuit under a reservation of rights. (See id. ¶ 19.)

## II. **PROCEDURAL HISTORY**

In December 2018, Great West filed a declaratory judgment action in this court under 28 U.S.C § 2202. (See Great West Cas. Co. v. Packaging Corp. of Am., Docket No. 18-CV-01026 (M.D.N.C. case dismissed Oct. 18, 2021); see also Complaint at 10-11, Great West Cas. Co., No. 18-CV-01026.) Great West sought a declaration that it was not obligated to provide coverage to PCA under the Insurance Policy in connection with the Underlying Lawsuit and that Salem was not obligated to defend or indemnify PCA under the Transportation Agreement in connection with the Underlying Lawsuit. (See Great West Cas. Co., Docket No. 18-CV-01026; see also Complaint at 10-11, Great West Cas. Co., No. 18-CV-01026.) Several days later, PCA filed a complaint against

- 8 -

Great West for declaratory judgment, breach of contract, and extra-contractual relief in the U.S. District Court for the Northern District of Illinois. (See Packaging Corp. of Am. v. Great West Cas. Co., Docket No. 18-CV-08400, (N.D. Ill. case dismissed Sept. 30, 2021); see also Complaint at 4-7, Packaging Corp. of Am., Docket No. 18-CV-08400.) Ultimately, both lawsuits were dismissed without prejudice in 2021.

In April 2021, Great West filed a Complaint for Declaratory Judgment against PCA and ACE in this court seeking an order declaring that neither the Transportation Agreement nor the Insurance Policy imposed upon Great West a duty-to-defend or duty-to-indemnify PCA in connection with the Underlying Lawsuit. (See Great West's Compl. (Doc. 1).) Subsequently, Great West filed its First Amended Complaint for Declaratory Judgment, seeking a judgment declaring that: (I) Great West has no duty-to-defend or duty-to-indemnify PCA in connection with the underlying lawsuit; (II) if Great West does owe any duty to PCA, ACE, as PCA's insurer, also owes a duty to defend and indemnify PCA such that ACE is obligated to reimburse Great West for its pro rata share of the litigation costs and settlement; and (III) if Great West does owe any duty to PCA, ACE is obligated to reimburse Great West for its pro rata share of the litigation costs and settlement under the principle of equitable

- 9 -

contribution. (See Great West's First Am. Compl. (Doc. 57)
¶¶ 65-79.)

PCA filed an Answer to Great West's First Amended Complaint
and asserted a counterclaim seeking declaratory relief: (a)
denying all relief sought by Great West; (b) declaring that
Great West has a duty-to-defend PCA in the Underlying Lawsuit;
(c) declaring that Great West has a duty-to-indemnify PCA
against the settlement in the Underlying Lawsuit; and (d)
awarding PCA actual damages, costs, expenses, and any other
relief to which it is entitled. (See PCA's Answer and Countercl.
(Doc. 59) at 20-21.)

ACE filed an Answer to Great West's First Amended
Complaint, asserted a cross-claim against PCA, and asserted a
counterclaim against Great West. (See ACE's Answer and
Countercl. (Doc. 64).) In its counterclaim, ACE seeks judgment:
(a) declaring that Great West has a sole and non-contributory
obligation to indemnify PCA for its defense in the Underlying
Litigation, (b) declaring that ACE has no obligation to share in
Great West's defense of PCA in the Underlying Litigation; (c)
declaring that Great West is obligated to pay PCA the liability
limits pursuant to the Insurance Policy; and (d) awarding ACE
damages, costs, and expenses. (See ACE's Answer and Countercl.
(Doc. 64) at 28-29.)

- 10 -

On January 1, 2022, Great West filed a Motion to Dismiss PCA's Counterclaim under Rule 12(b)(6) and a Motion for Judgment on the Pleadings under Rule 12(c), (see Doc. 61), as well as an accompanying Memorandum, (see Doc. 62). Additionally, on February 18, 2022, Great West filed a Motion to Dismiss ACE's Counterclaim under Federal Rule of Civil Procedure 12(b)(6) and a Motion for Judgment on the Pleadings under Rule 12(c), (see Doc. 74), as well as an accompanying Memorandum, (see Doc. 75). PCA responded in opposition to Great West's motions addressing its counterclaim. (See PCA's Mem. Of Law in Opp. to Great West's Mot. for J. on the Pleadings and Mot. to Dismiss PCA's Countercl. ("PCA's Opp. Br.") (Doc. 66).) So did ACE in opposition to Great West's motions addressing its counterclaim. (See ACE's Resp. in Opp'n to Great West's Mot. to Dismiss ACE's Am. Countercl. And Mot. for J. on the Pleadings ("ACE's Opp. Br.") (Doc. 80).) Great West has replied to both Defendants' opposition briefs. (See Great West's Reply to PCA's Counterclaim (Doc. 77); see Great West's Reply to ACE's Counterclaim (Doc. 83).) These motions are ripe for adjudication.

Because both Defendants/Counter-Plaintiffs pursue similar counterclaims and because both of Plaintiff's present motions seek similar relief, this court will address all of Great West's motions together.

## III. __STANDARD OF REVIEW__

### D. __Motion to Dismiss under Rule 12(b)(6)__

To survive a Rule 12(b)(6) motion, a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if the claimant "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. When ruling on a motion to dismiss, this court accepts the claim's factual allegations as true. See Iqbal, 556 U.S. at 678. Further, this court liberally construes the claims "including all reasonable inferences therefrom" in the claimant's favor. Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004). This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

### E. Motion for Judgment on the Pleadings under Rule 12(c)

Rule 12(c) motions for judgment on the pleadings are "designed to dispose of cases when the material facts are not in dispute and the court can judge the case on its merits by considering the pleadings." Preston v. Leake, 629 F. Supp. 2d 517, 521 (E.D.N.C. 2009). The pleadings, matters of public record, exhibits to the pleadings, "and exhibits to the Rule 12(c) motions that [are] integral to the complaint and authentic" may be considered. Massey v. Ojanit, 759 F.3d 343, 347-48 (4th Cir. 2014). "[T]he court must accept all of the non-movant's factual averments as true and draw all reasonable inferences in its favor." SmithKline Beecham Corp., No. 1:15CV360, 2016 WL 922792, at *3 (M.D.N.C. Mar. 10, 2016). Judgment on the pleadings is generally only warranted where "the movant clearly establishes that no material fact is disputed and that movant is entitled to judgment as a matter of law." Preston, 629 F. Supp. at 521.

### IV. ANALYSIS

PCA and ACE argue that Great West has a sole and non-contributory obligation to defend PCA in the Underlying Lawsuit and to indemnify PCA for litigation and settlement costs, pursuant to Salem's obligations to PCA under the Transportation Agreement and Great West's obligations to Salem under the

- 13 -

Insurance Policy. (See ACE's Answer and Countercl. (Doc. 64) at 28-29; see also PCA's Answer and Countercl. (Doc. 59) at 19-21.) Great West disagrees and argues that it has no obligation to defend or indemnify PCA in the Underlying Lawsuit; in the alternative, if it bears any obligation, that obligation is shared with ACE such that Great West is owed a pro rata share of the litigation and settlement costs from ACE. (See Great West's First Am. Compl. (Doc. 57) ¶¶ 65-72.)

First, this court finds that PCA is afforded coverage from Great West under the Insurance Policy, so long as Salem was also negligent for Ms. Wallace's injuries. Second, this court finds that the indemnification provision in the Transportation Agreement is also controlling; if Salem was also negligent for Ms. Wallace's injuries in the Underlying Lawsuit, then Salem is obligated to indemnify PCA. Thus, prior to more factual development on the issue of Salem's alleged negligence, it would be premature for this court to issue judgment on the pleadings in favor of Great West or to grant Great West's motions to dismiss ACE's and PCA's counterclaims. Furthermore, until the question of Salem's negligence is resolved, determining if Great West is owed reimbursement or contribution for PCA's defense in the Underlying Litigation is similarly premature.

Accordingly, this court will deny both of Great West's
Motions for Judgment on the Pleadings, and this court will deny
both of Great West's Motions to Dismiss ACE's and PCA's
Counterclaims.

## A. Great West's Obligations Under the Insurance Policy

The parties dispute whether PCA is afforded coverage under
the Insurance Policy to defend in or indemnify against the
Underlying Lawsuit. (Compare PCA's Opp. Br. (Doc. 66) at 15–16,
with Great West's Mot. to Dismiss PCA's Countercl. (Doc. 62) at
12–13.)

This court finds that PCA is to entitled coverage under the
Insurance Policy only when PCA is liable for Salem's conduct or
negligence. Further, ACE and PCA have plausibly alleged facts
suggesting negligence on Salem's part. Because factfinding on
the issue of Salem's potential negligence is necessary, issuing
judgment on the pleadings in favor of Great West or granting
Great West's motions to dismiss ACE's and PCA's counterclaims is
not appropriate at this stage.

### 1. PCA's Coverage under the Insurance Policy

Great West alleges that the Insurance Policy was delivered
to Salem in North Carolina, so it was entered into in North
Carolina. (See Great West's First Am. Compl. (Doc. 57) ¶ 16.)
Thus, North Carolina law applies to the interpretation of the

- 15 -

Insurance Policy. See Tanglewood Land Co. v. Byrd, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980) ("[T]he interpretation of a contract is governed by the law of the place where the contract was made."). Under North Carolina law, if "the relevant language [of an insurance contract] is clear, then [a] court must use the plain meaning of the words." Nat'l Quarry Servs. v. First Mercury Ins., 372 F. Supp. 3d 296, 302 (M.D.N.C. 2019) (citing Fidelity Bankers Life Ins. V. Dortch, 318 N.C. 378, 380-81, 348 S.E.2d 794, 796 (1986)).

PCA argues that the Insurance Policy's plain language clearly affords PCA coverage, either as an "insured" or as an "additional insured." (See PCA's Opp. Br. (Doc. 66) at 15-16.) This court is not persuaded that PCA is an insured. However, this court finds that PCA has plausibly alleged coverage as an additional insured.

First, PCA argues that its conduct is covered as an insured because a provision of the Insurance Policy covers "[a]nyone else while using with [Salem's] permission a covered 'auto' [Salem] own[s]." (PCA's Opp. Br. (Doc. 66) at 16; see also Insurance Policy (Doc. 57-3) at 46.) However, the Insurance Policy expressly denies coverage under this provision to "[a]nyone other than [Salem] 'employees' . . . while moving property to or from a covered 'auto.'" (Insurance Policy (Doc.

- 16 -

57-3) at 46.) PCA tries to circumvent this coverage carve-out by stressing that the Underlying Lawsuit "does not allege that anyone other than Ms. Wallace, an employee of Salem, was moving property to or from Salem's truck at the time she was injured." (PCA's Opp. Br. (Doc. 66) at 16.) This argument misunderstands the Underlying Lawsuit's allegations. The Underlying Lawsuit does not allege that PCA is liable for conduct that occurred at the time Ms. Wallace was injured, but rather, for conduct that occurred when "PCA through its employees and/or agents, had previously loaded th[e] trailer with pallets containing cardboard at another location."[4] (Ex. A ("Complaint in Underlying Lawsuit") (Doc. 57-1) ¶ 7 (emphasis added).) At this stage of the proceedings, none of the parties have challenged the

---

[4] This court "may properly take judicial notice of [the Complaint in the Underlying Litigation as a] matter[] of public record" when reviewing Defendant's motion. Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (reviewing a Rule 12(b)(6) motion to dismiss); see also Papasan v. Allain, 478 U.S. 265, 268 n.1 (1986) ("Although this case comes to us on a motion to dismiss under Federal Rule of Civil Procedure 12(b), we are not precluded in our review of the complaint from taking notice of items in the public record."); Massey v. Ojaniit, 759 F.3d 343, 347 (4th Cir. 2014) (On a Rule 12(c) motion, "[o]pen to the district court's consideration were . . . matters of public record."). Indeed, "the most frequent use of judicial notice . . . is in noticing the content of court records." Colonial Penn Ins. v. Coil, 887 F.2d 1236, 1239-40 (4th Cir. 1989) (internal citations and quotations omitted); see also Witthohn v. Fed. Ins., 164 F. App'x 395, 397 (4th Cir. 2006) ("A district court may clearly take judicial notice of [state court] public records" on a motion to dismiss.).

assertion that solely PCA employees, without the involvement of any Salem employees, initially loaded the truck's trailer. The development of additional facts through discovery may lead to a different conclusion, but on these facts this court is not persuaded PCA is an "insured."

Second, PCA argues that it is entitled to coverage as an "additional insured" under the Insurance Policy. (See PCA's Opp. Br. (Doc. 66) at 15.) This is because—according to PCA—it was held liable for Salem's negligent conduct in the Underlying Lawsuit. (See id.) PCA explains: the Insurance Policy "makes PCA an additional insured for any claim that renders it potentially liable for the conduct of an insured. . . . and it is undisputed that Salem falls within [an insured]." (Id.) Great West argues that PCA is not entitled to coverage because PCA is not an "insured;" PCA is merely an "additional insured." (Great West's First Am. Compl. (Doc. 57) ¶¶ 20-29.) Neither party disputes that PCA is an "additional insured" under the Insurance Policy. Instead, they dispute whether PCA is entitled to coverage for Ms. Wallace's injuries as an additional insured party.

When the relevant provisions of the Insurance Policy are read in their entirety, they unambiguously grant PCA coverage only when PCA is liable for the conduct of a person or organization that are themselves insured under the Insurance

- 18 -

Policy. First, PCA is included in the endorsement for Salem's Insurance Policy as an additional insured. (Insurance Policy (Doc. 57-3) at 229.) Second, the additional insured endorsement in the Insurance Policy includes the following provision:

> <u>Covered Autos Liability Coverage</u> -
> <u>Who is an Insured</u> is changed to include as an "insured" the person or organization shown in the SCHEDULE on this endorsement only if they are liable for the conduct of an "insured" shown in the <u>Who is an Insured</u> provisions and only to the extent of that liability.
>
> . . .
>
> The coverage provided by this endorsement ends when the  Additional Insured is not liable for your conduct.

(<u>Id.</u> (emphasis in original).)

Salem (and thus, its employees) is the named insured party under the Insurance Policy. (<u>See</u> <u>id.</u>) Under the plain language of the Insurance Policy, if an additional insured is liable for the conduct of the insured, only then is that additional insured covered by the Insurance Policy—and only to the extent of the liability of the insured party. (<u>See</u> <u>id.</u>) This language unambiguously affords PCA coverage only when PCA is liable for the conduct of a person or organization that are themselves insured under the Insurance Policy—in this case, Salem. Therefore, this court concludes that Great West has a duty-to-

defend or duty-to-indemnify PCA in the Underlying Lawsuit only if PCA is deemed liable for Salem's conduct.

## 2. **PCA's Liability for Salem's Conduct**

The parties dispute whether PCA may in fact be facing liability for Salem's conduct. PCA stresses that "discovery . . . will reveal that Ms. Wallace's injuries did not arise from the sole negligence of PCA." (PCA's Opp. Br. (Doc. 66) at 2.) While PCA's allegations are primarily legal conclusions, ACE alleges facts suggesting noncompliance with the Federal Motor Carrier Safety Regulations:

> [A]t no point before Salem's Driver departed the [PCA] facility in Honea Path, South Carolina on October 2, 2015 did Salem's Driver properly inspect or examine the cargo in the trailer to make sure the cargo was properly distributed and adequately secured.
>
> . . . .
>
> . . .[A]t no point within the first 50 miles after departing the [PCA] facility in Honea Path, South Carolina on October 2, 2015 did Salem's Driver inspect or examine the cargo in the trailer to make sure the cargo was properly distributed and adequately secured. . . .[A]t no point within the first 50 miles after departing the [PCA] facility in Honea Path, South Carolina on October 2, 2015 did Salem's Driver cause any adjustments to be made to the cargo or load securement devices as necessary, including adding more securement devices, to ensure that the cargo could not shift on or within, or fall from, the trailer.
>
> . . . .
>
> . . .Salem's driver did not request Wallace's assistance with unloading the trailer . . . . [But]

- 20 -

> Wallace attempted to open the back doors of the
> trailer without talking with Salem's Driver about: (a)
> The nature of the cargo in the trailer; (b) Whether
> Salem's Driver had inspected or examined the cargo in
> the trailer before or during the trip to ensure it was
> properly distributed and adequately secured; or (c)
> Whether the cargo had shifted or moved during transit.

(ACE's Answer and Countercl. (Doc. 64) at 19–21, ¶¶ 35–47; see
49 C.F.R. 329.9 ("[A] motor carrier may not require or permit a
driver to operate a commercial motor vehicle unless . . . [t]he
commercial motor vehicle's cargo is properly distributed and
adequately secured . . . .").)

Great West disagrees that any additional material facts are
needed, concluding that as a matter of law, it has no duty-to-
defend PCA in the Underlying Lawsuit. Great West advances three
arguments to support its conclusion: (1) PCA cannot be liable
for Salem's conduct in the Underlying Lawsuit because
Ms. Wallace has not alleged such liability but has only alleged
negligence against PCA "based solely on PCA's acts," (Great
West's Mot. to Dismiss PCA's Countercl. (Doc. 62) at 15); (2)
even if Ms. Wallace attempted to allege such liability on
Salem's part, she would be barred from doing so by the North
Carolina Workers' Compensation Act's exclusive remedy
provisions, (see id. at 16–17 (citing N.C. Gen. Stat. § 97-
10.1)); (3) even if Ms. Wallace was not barred from alleging
liability on Salem's part by these exclusive remedy provisions,

- 21 -

the Insurance Policy's "Expected or Intended Injury" and "Contractual" exclusions would bar coverage, (see id. at 17–20). All three of Great West's arguments fall short.

First, even though Ms. Wallace herself has not alleged in the Underlying Lawsuit that Salem was negligent, whether PCA faces liability for Salem's conduct remains an outstanding issue of fact. Here again, unlike PCA, ACE has alleged plausible facts suggesting that Salem was negligent for failure to comply with Federal Motor Carrier Safety Regulations.[5] (See ACE's Opp. Brief

---

[5] Since Ms. Wallace's injury occurred in North Carolina, North Carolina's negligence laws apply. Even so, based on the facts alleged by ACE, Salem may also be negligent under both Illinois and North Carolina law; thus, a choice of law analysis to determine which state's law applies to Ms. Wallace's injury is not necessary at this stage of proceedings.

Under North Carolina law, "the violation of an ordinance or of a statute designed for the protection of life and limb, is negligence per se" so long as "there [is] a causal relation between the violation and the injury." McNair v. Richardson, 244 N.C. 65, 67, 92 S.E.2d 459, 460 (1956).

In Illinois, "the issue of contributory negligence is ordinarily and preeminently one of fact for the jury to determine. The violation of a safety statute, ordinance or regulation having the force of law is prima facie evidence of negligence[,] . . . [but] may be rebutted by proof that the party acted reasonably under the circumstances, despite the violation." Fontanne v. Fed. Paper Bd. Co., 105 Ill. App. 3d 306, 336 (Ill. App. Ct. 1982) (explaining that determining whether violation of 49 C.F.R. 329.9 constitutes negligence depends on the "facts and circumstances in evidence").

(Doc. 80) at 5.) Because Ms. Wallace's injuries may not have resulted "solely [from] PCA's negligence," as Great West claims, (Great West's First Am. Compl. (Doc. 57) ¶ 36.), PCA may be facing liability for Salem's conduct.

Second, because PCA—not Ms. Wallace—has raised the issue of Salem's conduct in the Underlying Lawsuit, the North Carolina Workers' Compensation Act's exclusive remedy provisions do not appear to apply. Great West claims that "[b]ecause Ms. Wallace cannot pursue a civil action against her employer, Salem can never be held liable for claimed acts of negligence against it. As such, no derivative liability against PCA can be alleged as a result of Salem's negligence." (Great West's Mot. to Dismiss Ace's Countercl. (Doc. 75) at 11.) This court disagrees. The workers' compensation scheme is Ms. Wallace's exclusive remedy against her employer, Salem. See N.C. Gen. Stat. § 97-10.1 ("[T]he rights and remedies herein granted to the employee . . . shall exclude all other rights and remedies of the employee . . . as against the employer at common law . . . .) (emphasis

---

Since North Carolina law finds violations of safety statutes to be negligence per se and Illinois law finds violations of such statutes to be evidence of negligence (at minimum), determining which state's negligence law is relevant is not necessary to rule on Great West's Motions to Dismiss and Motions for Judgment on the Pleadings. At a later stage, PCA and ACE will need to establish more conclusively that Salem was negligent, but for Rule 12 purposes, ACE has plausibly alleged Salem's negligence.

added). However, the exclusivity provision only limits the remedies available to the injured employee, not third parties, such as PCA or ACE. See id. § 97-10.2 (discussing third-party liability under the workers' compensation scheme).

Third, neither the Insurance Policy's "Expected or Intended Injury," exclusion nor the "Contractual" exclusion bar coverage. Great West argues that the Insurance Policy's Expected or Intended Injury exclusion would necessarily bar coverage if "Ms. Wallace were to file a lawsuit against Salem or seek to hold PCA derivatively liable for Salem's conduct." (Great West's Mot. to Dismiss PCA's Countercl. (Doc. 62) at 18.) This contention fails for the same reason the Workers' Compensation Act argument discussed above fails. The allegations against Salem have been raised by PCA, not Ms. Wallace. Similarly, Great West's argument that the Contractual exclusion bars coverage "[t]o the extent that PCA claims a right to indemnity," (id. at 19), is also unavailing. Under the Insurance Policy, the Contractual exclusion does not apply to "liability for damages . . . assumed in . . . an 'insured contract,'" where insured contracts include agreements to "assume the tort liability of another . . . ." (Insurance Policy (Doc. 57-3) at 48, 59.) Although Ms. Wallace may not bring a tort claim against Salem due to the workers' compensation scheme, both PCA or ACE can sue

- 24 -

Salem for negligence under the indemnification provision of the Transportation Agreement.

In sum, given that Great West's duty-to-defend under the Insurance Policy is contingent on PCA's liability for Salem's conduct and that Defendant ACE has plausibly alleged negligence on Salem's part, it would be premature for this court to grant judgment on the pleadings or to grant the motions to dismiss. More factual development is needed to ascertain the validity of Defendants' allegations regarding Salem's liability.

## B. Great West's Obligations Under the Transportation Agreement

Great West first argues that "[u]nder the plain language of the Transportation Agreement between Salem and PCA, Salem does not have an obligation [to] indemnify PCA for PCA's own negligence." (Great West's First Am. Compl. (Doc. 57) ¶ 37.) Consequently, as Salem's insurer, Great West contends that it has no obligation to defend PCA in or indemnify PCA for the Underlying Lawsuit. (See id. ¶¶ 34–40.) Second, Great West argues that the indemnity provision in the Transportation Agreement is void and unenforceable under Illinois and North Carolina law. (See id. at ¶ 38.)

In contrast, PCA and ACE argue that Ms. Wallace's injuries—the subject of the Underlying Lawsuit—were not solely due to PCA's negligence. (See ACE's Answer and Countercl. (Doc. 64) at

- 25 -

25-27, ¶¶ 65-74.) Instead, they argue that Salem was jointly negligent due to its failure to comply with 49 C.F.R. § 392.9. (See id.) Pursuant to the Transportation Agreement, Salem contractually agreed to indemnify PCA for personal injuries caused by Salem's negligence, so Great West (as Salem's insurer) is obligated to defend and indemnify PCA, per the Insurance Policy. (ACE's Opp. Brief (Doc. 80) at 10-11.)

Based on the facts taken in the light most favorable to PCA and ACE, this court finds that Salem may also have been negligent and thus liable for Ms. Wallace's injuries. This court also finds that the indemnification provision is enforceable. Thus, Great West, as Salem's insurer (discussed supra Section IV.A), may owe a duty-to-defend and a duty-to-indemnify PCA, pending further factfinding on whether Salem was actually negligent.

### 1. Salem's Negligence

The parties seem to agree that Illinois law governs the Transportation Agreement. (Compare Great West's Mot. to Dismiss Ace's Countercl. (Doc. 75) at 3, with ACE's Opp. Brief (Doc. 80) at 4.) In Illinois, when interpreting a contract, "if the language is clear and unambiguous[,] it must be taken and understood according to its plain, ordinary[,] and popular sense." Dempsey v. Nat'l Life & Acc. Ins., 404 Ill. 423, 426, 88

- 26 -

N.E.2d 874, 876 (1949). The relevant portion of the Transportation Agreement plainly states that "[Salem] shall, at all times, both during and after the effective Term, defend [and] indemnify . . . [PCA] . . . against any . . . . claims for personal injury" arising from Salem's conduct transporting PCA's products. (Transportation Agreement (Doc. 57-2) ¶ 5(a).)

ACE has alleged plausible facts suggesting that Salem and Salem's employees were negligent in causing Ms. Wallace's injuries for failure to comply with Federal Motor Carrier Safety Regulations. (See ACE's Answer and Countercl. (Doc. 64) at 19–20; see 49 C.F.R. 329.9(a) ("[A] motor carrier may not require or permit a driver to operate a commercial motor vehicle unless… [t]he commercial motor vehicle's cargo is properly distributed and adequately secured . . . .").) Under North Carolina law, "the violation of an ordinance or of a statute designed for the protection of life and limb is negligence per se" so long as "there [is] a causal relation between the violation and the injury." McNair, 244 N.C. at 67, 92 S.E.2d at 460. ACE alleges that Salem's employees' failure to ensure that the cargo in the tractor-trailer was adequately secured, as required by the Federal Motor Carrier Safety Regulations, may have contributed to the pallet falling and striking Ms. Wallace. (See ACE's Answer and Countercl. (Doc. 64) at 19–22; see also ACE's Opp

Brief (Doc. 80) at 5.) These facts plausibly suggest the causal connection necessary to show negligence per se. At this stage of the proceedings, ACE has plausibly alleged facts suggesting that Salem or Salem's employees may have been negligent per se.[6] As such, Ms. Wallace's injuries may not have resulted "solely [from] PCA's negligence," as Great West claims. (Great West's First Am. Compl. (Doc. 57) ¶ 36.)

Great West argues that even if "PCA is liable [to Ms. Wallace] because of Salem's negligence, any such allegation would, nevertheless, be insufficient to give rise to coverage under the [Insurance Policy] because the claim would be barred by the exclusive remedy provisions of the North Carolina's[sic] Workers' Compensation Act." (Great West's Motion to Dismiss ACE's Countercl. (Doc. 75) at 11.) However, as discussed <u>supra</u> Section IV.A.2, the workers' compensation scheme only limits Ms. Wallace's remedies against Salem (her employer), not her remedies against other third-parties or the remedies available to third-parties. "[T]he [Workers' Compensation] Act recognizes the right of third parties to enforce express contracts of

_____

[6] Since Ms. Wallace's injury occurred in North Carolina, North Carolina law will apply to determine whether Salem was negligent or not. However, as discussed <u>supra</u> in Section IV.A.2 n.5, ACE has alleged plausible facts to, at minimum, show evidence of negligence under Illinois law. As a result, determining which state's law applies to Ms. Wallace's injury is not necessary at this stage in proceedings.

- 28 -

indemnity against employers." <u>Gibbs v. Carolina Power & Light Co.</u>, 265 N.C. 459, 466-67, 144 S.E.2d 393, 400-01 (1965). As for lawsuits by an employee (e.g., Ms. Wallace) against a third-party (e.g., PCA), "[t]he Act states:

> "If the verdict shall be that <u>actionable negligence of the employer did join and concur with that of the third party</u> in producing the injury or death, then the court shall reduce the damages award by the jury against the third party by the amount which the employer would otherwise be entitled to receive therefrom by way of subrogation . . . and the third party shall have no further right by way of contribution or otherwise against the employer," except as provided by an express indemnity contract.

<u>Taveney v. Int'l Paper Co.</u>, No. 4:19CV103, 2022 WL 909403, at *9 (E.D.N.C. March 28, 2022) (quoting N.C. Gen. Stat. § 97-10.2(e)) (emphasis in original).

PCA, the third-party here, has settled with Ms. Wallace in the Underlying Lawsuit. (<u>See</u> PCA's Answer and Countercl. (Doc. 59) at 19.) ACE has plausibly alleged that Salem was also negligent in Ms. Wallace's injuries. Since there is an express indemnity provision in the Transportation Agreement, the workers' compensation scheme does not bar PCA and ACE's counterclaims. Instead, the indemnity provision controls.

## 2. <u>Enforceability of Indemnification Provision</u>

Great West argues that the Transportation Agreement's indemnification provision is void and unenforceable. (Great West's First Am. Compl. (Doc. 57) ¶ 38.) However, neither North

- 29 -

Carolina, nor Illinois law render the Transportation Agreement's indemnification provision void and unenforceable based on the facts as pleaded by PCA and ACE.

"North Carolina law generally allows a party to contractually provide for indemnification against its own negligence." Taveney, 2022 WL 909403, at *7 (internal citations omitted). "Courts interpret indemnity provisions like other contractual provisions. The primary purpose in construing a contract of indemnity is to ascertain and give effect to the intention of the parties, and ordinary rules of construction apply." Id. at *6 (citations omitted). Furthermore, North Carolina's anti-indemnity statute does not apply to contract provisions in which a motor carrier (in this case, Salem) indemnifies the contract promisee (PCA) for the carrier's own negligence. See N.C. Gen Stat. § 62-212(c) ("Nothing contained in this section affects a provision, clause, covenant, or agreement where the motor carrier indemnifies or holds harmless the contract's promise against liability for damages to the extent that the damages were caused by and resulted from the negligence of the motor carrier . . . .).

The Transportation Agreement's indemnification provision is clear and unambiguous—Salem agreed to indemnify PCA for personal injury claims arising from Salem's conduct, but not for personal

- 30 -

injury claims arising from PCA's sole negligence. (See
Transportation Agreement (Doc. 57-2) ¶ 5(a) ("[Salem] shall, at
all times, both during and after the effective Term, defend
[and] indemnify . . . [PCA] . . . against any . . . . claims for
personal injury" arising from Salem's conduct transporting PCA's
products.).) Thus, the Transportation Agreement's indemnity
provision "is unambiguous and is not void . . . ." See Taveney,
2022 WL 909403, at 7.

Under Illinois law, an indemnification provision may be
void and unenforceable if it allows a party to evade liability
for its own negligence. See Coyote Logistics, LLC v. Bajan
Enterprise, Inc., ____ F. Supp. 3d ____, 2022 WL 2064857, at *5
(N.D. Ill. 2022); see also Burke v. John Maneely Co., Case No.
14-cv-285, 2016 WL 454330, at *5-6 (N.D. Ill. Feb. 5, 2016). ACE
has alleged that Salem was contributorily negligent for Ms.
Wallace's injuries. (ACE's Opp. Brief (Doc. 80) at 5.) Thus, PCA
and ACE are seeking indemnification for Salem's negligence, not
for PCA's own negligence; the provision is enforceable. Of
course, if Ms. Wallace's injuries were due solely to PCA's

- 31 -

negligence, then the indemnification provision may not be enforceable.[7]

## V.   **CONCLUSION**

Under the Transportation Agreement, if Ms. Wallace's injuries in the Underlying Lawsuit—for which PCA faces liability—arose from Salem's conduct, then Salem must indemnify PCA. Furthermore, under the Insurance Policy, PCA is afforded coverage from Great West so long as Salem was also negligent for any injuries suffered by Ms. Wallace. ACE has plead sufficient facts to plausibly allege that Salem's negligence, not PCA's sole negligence, resulted in Ms. Wallace's injuries. Assuming at this stage that Salem was also negligent, Great West is obligated to defend and indemnify PCA and ACE—to the liability limits in the Insurance Policy.

For the reasons described in footnote 2, PCA will be required to file an amended counterclaim setting forth plausible facts in support of its claim.

---

[7] At this stage, this court need not determine if the indemnification provision would be enforceable for PCA's sole negligence, as ACE has plausibly alleged Salem's negligence. (See ACE's Opp. Brief (Doc. 80) at 5.) If, however, facts later show that Salem was not also negligent and that Ms. Wallace's injuries were solely due to PCA's negligence, then this court may need to re-visit whether the indemnification provision is enforceable under Illinois law.

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that Great West's Motion for Judgment on the Pleadings and Motion to Dismiss PCA's Counterclaim, (Doc. 61), is **DENIED.** It is also **ORDERED** that Great West's Motion for Judgment on the Pleadings and Motion to Dismiss ACE's Counterclaim, (Doc. 74), is **DENIED.** Third, it is **ORDERED** that PCA file an amended counterclaim within twenty days of this order setting out the specific facts, rather than legal conclusions, upon which it relies. Should it fail to do so, Great West may file another motion to dismiss.

This the 30th day of September, 2022.

_____
United States District Judge

- 33 -